# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IN RE GENERAL GROWTH
PROPERTIES, INC., ERISA LITIGATION

No. 08 CV 6680
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed an amended consolidated class action complaint against Defendants alleging violations of the Employee Retirement Income Security Act. Plaintiffs five count complaint alleges breaches of prudence and fiduciary duty stemming from Defendants' management of the General Growth 401(k) Savings Plan. Defendants Judy Herbst, Charles Lhotka, Heather Margulis, Michelle McGovern, Jean Schlemmer, Kate Sheehy, John Bucksbaum, and Robert Michaels now move to dismiss Plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Bernard Freibaum also moves to dismiss Plaintiffs' amended complaint and has adopted and incorporated by reference Defendants Judy Herbst, Charles Lhotka, Heather Margulis, Michelle McGovern, Jean Schlemmer, Kate Sheehy, John Bucksbaum, and Robert Michaels' motion to dismiss. For the following reasons, Defendants' motions to dismiss are granted in part and denied in part.

## I. STATEMENT OF FACTS

Plaintiffs filed this consolidated class action complaint against Defendants for violations of the Employee Retirement Income Security Act ("ERISA"). Plaintiffs brought this action on behalf of the General Growth 401(k) Savings Plan (the "Plan") and all of its participants and beneficiaries. Plaintiffs allege that from April 30, 2007 to April 16, 2009 (the "Class Period"), the Plan acquired and held shares of General Growth common stock ("GGP Stock" or "Company Stock") which were offered as one of the retirement savings options to Participants in the Plan.

Plaintiffs allege that throughout the Class Period, Defendants allowed the Plan to acquire and hold GGP Stock even though they knew or should have known that the Company Stock was an imprudent investment.

General Growth is a self-administered real estate investment trust that began publicly trading in April 1993. General Growth filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code on April 16, 2009. General Growth conducts most business through its operating partnership GGP Limited Partnership ("GGPLP"), in which it holds approximately a 98% ownership interest. GGPLP is the sponsor and administrator of the Plan. GGPLP also filed for bankruptcy protection on April 16, 2009.

Director Defendants

Defendants John Bucksbaum ("Bucksbaum"), Bernard Freibaum ("Freibaum"), and Robert A. Michaels ("Michaels") are referred to collectively as the "Director Defendants." These three individuals served the roles of Chief Executive Officer Executive Vice President, Chief Financial Officer, Chief Operating Officer, Director and President of the Company. These individuals also served on various Committees where they exercised discretionary authority or discretionary control over the Plan.

The Administrative Committee Defendants

GGPLP established the General Growth 401(k) Savings Plan Administrative Committee (the "Administrative Committee") to fulfill its responsibilities as Plan Administrator. The Plan Administrator has the sole authority to determine all questions of fact arising under the Plan. The Administrative Committee was generally responsible for selecting service providers, establishing policies and procedures, ensuring government compliance, and ensuring that the Plan operated

according to its terms.  During the Class Period, the Administrative Committee was comprised of Judy Herbst ("Herbst"), Charles Lhotka ("Lhotka"), Michelle R. McGovern ("McGovern") and Heather Margulis ("Margulis").

The Investment Committee Defendants

GGPLP administered the Plan along with members of the General Growth 401(k) Savings Plan Investment Committee (the "Investment Committee") which was appointed by GGPLP to perform Plan-related fiduciary functions and did so during the Class Period.  The Investment Committee selected investment options for the plan, monitored investment strategies, performance and risk, and was charged with taking appropriate action if objectives were no longer being met or if the investment strategy is no longer appropriate.  The Investment Committee was comprised of Bucksbum, Michaels, Lhotka, Herbst, Jean Schlemmer ("Schlemmer"), Freibaum, and Kate Sheehy ("Sheehy").[1]  On June 18, 2008, the Investment Committee discussed potential restrictions on common stock.  On September 23, 2008 a 20% cap was placed on individual plan holdings of common stock.

The Plan

The Plan is an "employee pension benefit plan" as defined by § 2(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A).  During the Class Period, the assets of the Plan were held in trust by Vanguard Fiduciary Trust Company pursuant to a trust agreement.  All contributions made to the Plan constituted a form of deferred compensation.  The Plan did not limit the ability of Plan

---

[1] There is a dispute regarding whether Defendants McGovern and Matthew Schnur ("Schnur") were members of the Investment Committee.  For purposes of this motion, I need not resolve this question of fact.

fiduciaries to divest assets invested in the General Growth Properties, Inc. Stock Fund ("GGP Stock Fund") as prudence required.

General Growth Management, Inc. adopted the Plan on January 1, 1988 to enable employees to provide for their future. On January 1, 1997, the GGP Management, Inc. Savings Plan was merged into the Plan, and then on June 18, 1998, the General Growth Employee Stock Ownership Plan was also merged into the Plan. Prior to January 1, 2006, the Plan was known as the General Growth Management Savings and Employee Stock Ownership Plan, but thereafter, the Plan was renamed the General Growth 401(k) Savings Plan.

According to the Plan's Trust Agreement, the "Plan Administrator shall have the exclusive authority and discretion to select the investment funds" under the Plan. Throughout the Class Period, the Plan offered various investment options for participant contributions, including the GGP Stock Fund. The GGP Stock Fund was comprised of shares of Company Stock. The Plan did not require the fiduciaries to offer GGP Stock as a retirement option and provided that the trust would consist of investment funds "which may include a fund investing solely in shares of General Growth Properties, Inc. (the "GGP Stock Fund")." According to the summary plan description ("SPD"), General Growth's filings with the SEC were incorporated into the Plan's governing documents. The SPD states that "[t]he Securities and Exchange Commission ("SEC") allows General Growth Properties, Inc. to disclose important information to you by referring you to documents that have been previously filed by GGP with the SEC. This is called incorporation by reference." The SPD goes on to explain that filings which are incorporated by reference include GGP's annual report on Form 10-K, the Plan's annual report on Form 11-K, all other reports filed by GGP under Sections 13(a) or 15(d) of the 1934 Act, and

the description of GGP's common stock. As of March 31, 2008, 39 participants had 100% of their Plan investment in GGP Stock.

In its 2008 Annual Report, the Company reported that its "operations focus was on developing projects." To finance these projects, Plaintiffs allege that General Growth secured billions of dollars in mortgage and construction loans. Plaintiffs argue however that Defendants knew or should have known that the nationwide subprime lending crisis and declines in consumer spending made expansion of real estate holdings "an ill-advised business plan."

Plaintiffs allege that the Company failed to disclose to the investing public or the Plan's Participants the adverse effect of the real estate market's collapse on the Company's real estate holdings, as well as the Company's inability to satisfy or refinance its substantial debt obligations. Plaintiffs assert that throughout the Class Period, Defendants issued materially inaccurate statements that misrepresented the strength of the Company's business and its ability to refinance its mortgages. As a result of these misrepresentations, Plaintiffs claim that GGP Stock traded at artificially inflated prices throughout the Class Period.

Plaintiffs point to statements made in the Company's financial results, quarterly reports, conference calls, press releases, letters to shareholders, and SEC filings made by various corporate officers. Plaintiffs allege that these statements were misleading because they were overly confident and concealed the truth regarding known risks, the value of Company Stock and the Company's substantial debt obligations. For example, on August 8, 2007, the Company announced favorable prospects for growth in its quarterly report form on Form 10-Q filed with the SEC. Again on October 31, 2007, the Company issued a press release announcing its financial results for the third quarter of 2007 and filed this press release with the SEC on Form 8-

5

K.  Plaintiffs cite numerous examples of allegedly false and misleading announcements and financial results released to the public and filed with the SEC.

On September 22, 2008, the Company issued a press release entitled "General Growth Pursues Debt Reduction and Strategic Alternatives."  Plaintiffs allege that as a result of this article and its disclosures, General Growth's Stock price dropped from $21.42 per share on September 19, 2008, to $16.08 per share on the next trading day.  On October 1, 2008, *The Wall Street Journal* published an article entitled "'General Growth Properties' High-Risk Strategies Hit Home-Big Debts Incurred to Build Up Firm, Executives' Stock."  Among other things, this article discussed alleged insider stock sales by Company executives of approximately $112 million.  Plaintiffs allege that subsequent to this article, General Growth's stock dropped from $14.62 to $7.59 overnight.  Plaintiffs also cite to several other news articles which discussed executive stock sales, the company's debt, and its efforts to refinance.  Plaintiffs allege that the continued drop in General Growth Stock price was a result of the artificial inflation caused by the Company's misleading public statements.

In a Form 10-Q SEC filing submitted on November 10, 2008, General Growth acknowledged the likelihood of bankruptcy as a result of its financing difficulties.  Throughout the Class Period, Plaintiffs allege that GGP Stock decreased from a trading high of $65.81 on April 30, 2007 to $0.49 on November 11, 2008.  On February 26, 2009, General Growth filed a Form 10-K with the SEC and acknowledged that it might file for bankruptcy protection due to the substantial amount of debt it was unable to refinance or extend.  In that disclosure, it also acknowledged that the value of its common stock could be reduced to zero as a result of a bankruptcy filing.

On April 16, 2009 General Growth announced that it was filing for bankruptcy under Chapter 11 of the U.S. Bankruptcy Code. Consequently, the New York Stock Exchange Regulation, Inc. announced that General Growth's stock would be suspended immediately. On its last day of trading on the NYSE, General Growth common stock closed at $1.05 per share. On April 23, 2009, General Growth received a notice of delisting from the NYSE.

Plaintiffs allege that Defendants regularly communicated with Plan Participants regarding the performance, and future financial prospects of the Company and its Stock. Plaintiffs allege that Defendants "fostered a positive attitude toward the Company's Stock and/or allowed Participants in the Plan to follow their natural bias towards investing in the equities of their employer by not disclosing negative material information concerning investment in the Company's stock." As such, Plan Participants were unable to make informed decisions regarding their Plan investments. Plaintiffs allege that Defendants disseminated to Plan Participants and filed with the SEC annual reports on Forms 11-K and 10-K inaccurate information.

Plaintiffs allege that Defendants knew or should have known that the Company's investment plan was "reckless in light of the collapsing housing market." According to Plaintiffs, Director Defendants had direct knowledge of the Company's substantial debt obligations, as evidenced by the Form 10-K filed with the SEC on February 26, 2009. Plaintiffs state that even after the Company acknowledged that Company stock would become worthless after bankruptcy, it failed to take any steps to protect Plan Participant's investments.

Finally, Plaintiffs allege that Director Defendants and other senior officers of the Company engaged in insider trading when these Company insiders sold approximately 6 million

shares of personally held GP Stock at allegedly inflated prices. Plaintiffs identify sales made by

Freibaum, Michaels, Schlemmer, Bayer, Berman, Dows, Gern, Hoyt, Polonia, Stewart, and

Wyant. Plaintiffs allege that these Defendants took "affirmative steps to preserve their

investments in GGP Stock" while they failed to take any action to prevent the Plan and its

Participants from incurring losses.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) requires that I analyze the legal sufficiency of

the complaint, and not the factual merits of the case. *Autry v. Northwest Premium Servs., Inc.*,

144 F.3d 1037, 1039 (7th Cir.1998). I must take all facts alleged in Plaintiffs' complaint as true

and draw all reasonable inferences from those facts in favor of Plaintiffs. *Caldwell v. City of

Elwood*, 959 F.2d 670, 671 (7th Cir.1992). Plaintiffs, for their part, must do more than solely

recite the elements for a violation; they must plead with sufficient particularity so that their right

to relief is more than a mere conjecture. *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs must plead their facts so that, when accepted as true, they show the plausibility of their

claim for relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Plaintiffs must do more than

plead facts that are "consistent with Defendants' liability" because that only shows the possibility,

not the plausibility, of their entitlement to relief. *Id.* (internal quotations omitted).

## III. DISCUSSION

### A. Plaintiffs Have Successfully Pled Imprudence.

Count I of the complaint alleges that all Defendants breached their fiduciary duty to

manage the Plan's assets prudently. Because a claim for breach of fiduciary duty is only valid

against a fiduciary, I must first determine whether or not all Defendants are fiduciaries under

ERISA. *Klosterman v. W. Gen. Mgmt., Inc.,* 32 F.3d 1119, 1122 (7th Cir. 1994). Under ERISA,

> A person is a fiduciary with respect to a plan to the extent (i) he exercises any
> discretionary authority or discretionary control respecting management or such
> plan or exercises any authority or control respecting management or disposition of
> its assets, (ii) he renders investment advice for a fee or other compensation, direct
> or indirect, with respect to any moneys or other property of such plan, or has any
> authority or responsibility to do so , or (iii) he has any discretionary authority or
> discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Further, a person is a fiduciary "to the extent" that he or she performs certain enumerated

tasks, and accordingly, may be an ERISA fiduciary for certain purposes, but not for others.

*Plumb v. Fluid Pump Serv. Inc.*, 124 F.3d 849, 854 (7th Cir. 1997) (citations omitted). "[T]he

threshold question is not whether the actions of some person employed to provide services under

a plan adversely affected a plan's beneficiary interest, but whether that person was acting as a

fiduciary (that is, was performing a fiduciary function) when taking the actions subject to

complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). A complaint must contain more

than conclusory statements that a defendant is a fiduciary. *Sharp Electronic Corp. v.

Metropolitan Life Ins. Co.*, 578 F.3d 505, 512 (7th Cir. 2009).

As noted previously, each Defendant exercised some degree of discretionary authority

over the management or administration of the Plan. Accordingly, for purposes of this motion, I

consider each Defendant a fiduciary under ERISA.[2] As fiduciaries, Defendants were required to

---

[2] Defendants argue that McGovern and Margulis should be dismissed because they are
not ERISA fiduciaries. Specifically, they assert that as members of only the Administrative
Committee, Margulis and McGovern were not fiduciaries as to any assertions within the
complaint. Plaintiffs name Margulis and McGovern as members of both the Administrative and
Investment Committees in their amended complaint, but not in the Consolidated class action

take steps to protect the Plan from investments that had become imprudent. *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 734 (7th Cir. 2006). Plaintiffs contend that Defendants "either knew or should have known that the nationwide subprime lending crisis and substantial declines in consumer spending made expansion of real estate holdings an ill-advised business plan."

### 1. The Presumption of Prudence Does Not Apply to Defendants.

As an initial matter, Defendants argue that they should be entitled to a presumption of prudence. An EIAP or ESOP fiduciary is generally entitled to a presumption of prudence where investment in company stock is required. *Moench v. Robertson*, 62 F.3d 553, 568-69 (3d Cir. 1995), *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008).[3] The deferential presumption was established prevent a trustee from sitting on a "razor's edge" where he must choose between acting prudently and violating the goals of the plan. *Moench*, 62 F.3d at 568-69.

The Third Circuit has recognized that ESOPs, while sometimes not being absolutely required to invest in employer securities, are strongly encouraged to make such investments. *Moench*, 62 F.3d at 571. Some courts have therefore extended the presumption of prudence to fiduciaries of ESOP or EIAPs that encourage but do not require company investment. Because the overarching goal of ESOP and EIAPs is to accomplish employee ownership, employer stock investment is a primary goal and fiduciaries are still susceptible to being placed on the "razors' edge." *Id.* at 568-69. This is in stark contrast to a non-ESOP pension plan where the goal is to

complaint which is the subject of this motion. It is not necessary for me to resolve this question at this time.

[3] Plaintiffs have not challenged Defendants' implication that the Plan is an ESOP or EIAP.

guarantee retirement benefits and minimize loss. *Id*. at 568.

While the Seventh Circuit has not yet determined whether the *Moench* presumption applies to plans that do not require investment in company stock, this District Court recently determined that the presumption does not apply in such cases. *Lingis v. Motorola, Inc.*, 649 F.Supp.2d 861, 879 (N.D. Ill. 2009). In *Lingis*, the Court noted that the rationale behind the presumption of prudence is to prevent a fiduciary from the dilemma of choosing between violating the plan agreement or violating their duty of prudence. *Id*. However, when a fiduciary is allowed chose whether or not to offer company stock, they are relieved of such a dilemma and are no longer entitled to the presumption of prudence. *Id*.

Defendants argue that the case at hand is distinguishable from *Lingis* because here, company ownership is a stated goal of the Plan and is strongly encouraged. Indeed, there is no dispute that the Plan was originally adopted to "enable eligible employees to provide for their future security by accumulating funds, sharing in the contributions of their employer, and obtaining an ownership interest in the Company." While it is true that the Plan does provide for ownership interest in the Company, the overarching goal of the Plan is providing employees future security. The Plan did not require the fiduciaries to offer GGP Stock as a retirement savings option, but rather, the Plan Document provided that the trust fund "may include a fund investing solely in shares of General Growth Properties, Inc." The rationale behind the presumption of prudence is to prevent a trustee from sitting on a "razor's edge" where he must choose between acting prudently and violating the goals of the plan. The trustees in this case were not confronted with such a dilemma, and accordingly, should not be granted a presumption of prudence.

<u>2. Plaintiffs Have Pled Fact Sufficient to Allege Imprudence</u>.

Section 404 of ERISA articulates a "prudent man" standard of care for plan fiduciaries providing that a fiduciary "shall discharge his duties . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims." 29 U.S.C. § 1104(a)(1)(B). When evaluating whether a fiduciary has fulfilled its role or not, a court must look to the totality of the circumstances concerning the investment decision. *D. Difelice v. US Airways*, 397 F.Supp.2d 758, 773 (E.D. Va. 2005); *See also Armstrong*, 446 F.3d at 732-33. The court should consider whether a fiduciary has examined an investment, evaluated its risk and liquidity, ensured that it is an appropriate plan investment, and that it is in the best interests of the plan participants. *D. Difelice v. US Airways*, 397 F.Supp.2d 758, 773 (E.D. Va. 2005). A court must not only look at the outcome of an investment because one's fiduciary duty "requires prudence, not prescience." *DeBruyne v. Equitable Life Assurance Soc'y of the U.S.*, 920 F.2d 457, 465 (7th Cir. 1990).

The Seventh Circuit has noted that "[a] trustee is not an entrepreneur." *Armstrong*, 446 F.3d at, 732. Instead, a trustee's services are like "those of a professional" *Id*. "He is supposed to be careful rather than bold." *Id*. In *Armstrong*, the Seventh Circuit noted that "[a] trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent." *Id*. Defendants exercised discretion when determining whether the Plan's assets were prudently invested. Plaintiffs allege that Defendants knew or should have known that the nationwide subprime lending crisis and declines in consumer spending made expansion of real estate holdings an ill-advised business plan. Plaintiffs plead numerous facts to support this contention, specifically, that GGP lost 99% of its stock value, that GGP was delisted from trading on the NYSE, that GGP suffered a 99% drop in stock value, and that GGP

accumulated billions of dollars in debt that GGP was unable to satisfy or refinance.  Plaintiffs allege that these losses were "cataclysmic for GGP and ultimately led the company to bankruptcy."  Although Defendants argue that GGP was a victim of the ripple effect caused by the subprime crisis" and real estate market downturn, Defendants also possessed the duty to protect the Plan's retirement assets.

Defendants are correct that the drop in stock price is not in and of itself irrefutable evidence of imprudence.  *DeBruyne*, 920 F.2d at 465.  Defendants go on to argue that each fact pleaded by Plaintiff is insufficient to show imprudence.  While Defendants are correct that standing alone, each allegation may not be sufficient to overcome a presumption of prudence, a court must review an ERISA fiduciary's conduct in light of "the totality of the circumstances involved in a particular transaction."  *Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 6 (1st Cir. 2009).  Furthermore, while Defendants argue that the many meetings and consultations with advisors actually prove that they acted prudently, for purposes of a motion to dismiss I must construe all facts in favor of the Plaintiff.  Accordingly, I find that when viewed together, all allegations made by Plaintiffs are sufficient to maintain a claim of imprudence.

For the foregoing reasons, Defendants' motion to dismiss count I is denied.

B. Plaintiffs Fail to State a Claim for Failure to Provide Complete and Accurate Information to Plan Participants.

Plaintiffs bring count II against the Director Defendants (Bucksbaum, Freibaum and Michaels) and Administrative Committee Defendants (Herbst, Lhotka, McGovern, and Margulis) (collectively the "Communications Defendants") claiming that they breached their fiduciary duty to provide complete and accurate information to the Plan's Participants. Plaintiffs allege that Defendants "fail[ed] to provide complete and accurate information regarding General Growth

13

and the prudence of GGP Stock as a retirement savings option under the Plan," made "material misrepresentations about the company's financial condition" and "permitted the issuance of a multitude of inaccurate statements through SEC filings and press releases regarding the value of GGP stock and the financial health of the company." Plaintiffs allege that because Defendants did not disclose adverse material information to Participants, they were not able to make informed choices regarding the investment of their retirement savings in GGP Stock and relied to their detriment on incomplete and inaccurate information.

A fiduciary has a duty not to mislead plan participants, or misrepresent the terms or administration of that plan. *Mondry v. American Family Mut. Ins. Co.*, 557 F.3d 781, 807 (7th Cir. 2009). Not all mistakes or omissions in conveying omissions constitute a breach of fiduciary duty. *Id*. However, material facts affecting the interests of plan participants and beneficiaries must be disclosed. *Tegtmeir v. Midwest Operating Engineers Pension Trust Fund*, 390 F.3d 1040, 1047 (7th Cir. 2004).

In the Seventh Circuit, a breach of fiduciary duty exists if fiduciaries "mislead plan participants or misrepresent the terms or administration of a plan." *Vallone v. CNA Financial Corp.*, 375 F.3d 623, 640-641 (7th Cir.2004) (quoting *Anweiler v. American Elec. Power Serv. Corp.,* 3 F.3d 986, 991 (7th Cir.1993). "Although not every error in communicating information regarding a plan will be found to violate a fiduciary's duty under ERISA, we have made clear that fiduciaries must communicate material facts affecting the interests of plan participants or beneficiaries and that this duty to communicate exists when a participant or beneficiary 'asks fiduciaries for information, and even when he or she does not.'" *Bowerman v. Wal-Mart Stores, Inc.,* 226 F.3d 574, 590 (7th Cir. 2000) (citations omitted). The Seventh Circuit "does not recognize merely negligent misrepresentations as a violation of ERISA." *Lingis* 649 F.Supp.2d

861 at 874. "While there is a duty to provide accurate information under ERISA, negligence in fulfilling that duty is not actionable." *Vallone*, 375 F.3d at 642. Accordingly, an employer "must have set out to disadvantage or deceive its employees . . . for a breach of fiduciary to be made out." *Id.* "Before such a violation can be found, there must be either an intentionally misleading statement [] or a material omission." *Hecker v. Deere & Co.*, 556 F.3d 575, 585 (7th Cir. 2009) (citations omitted).

### 1. SEC Disclosures

Plaintiffs allege that Defendants incorporated by reference materially misleading and inaccurate SEC filings and reports. Specifically, Plaintiffs point to misleading Company Forms 10-K and 8-K which were incorporated into the SPD.

It is undisputed that the Plan incorporates SEC filings by reference. In *Hill v. The Tribune Co.*, this Court held that incorporating SEC filings into ERISA summary plan descriptions makes such SEC filings statements made in the fiduciaries' ERISA capacity. No. 05 C 2602, 2006 WL 2861016, at *19 (N.D. Ill. Sept. 29, 2006). However, as this Court recently noted in *Lingis*, "[t]hose who prepare and sign SEC filings do not become ERISA fiduciaries through those acts, and consequently, do not violate ERISA if the filings contain misrepresentations." *Lingis*, 649 F.Supp.2d at 875 (citing *In re Worldcom, Inc.,* 263 F.Supp.2d 745, 766 (S.D.N.Y. 2003).

It is true that *Lingis* is factually distinguishable from the case at hand because in *Lingis*, the Court did not find that the SPDs incorporated SEC filings by reference. *Id.* at 875. However, the *Lingis* Court further noted that when SEC forms are incorporated by reference into SPDs, defendants are "discharging []corporate duties under the securities law, and not acting as an

ERISA fiduciary." *Lingis*, 649 F.Supp.2d at 875 (citing *Kirschbaum v. Reliant Entergy, Inc.*, 526 F.3d 243, 257 (5th Cir. 2008).

Recently, in *Patten v. Northern Trust Co.*, this Court noted that "[w]hether [] SEC filings would qualify as a fiduciary communication is an open question." - - F.Supp.2d - -, No. 08-cv-5912, 2010 WL 894050, at *12 n.16 (N.D.Ill. March 9, 2010). In *Patten*, the plaintiff alleged that the defendants had breached their fiduciary duty by negligently omitting material information from SEC filings made available to participants. *Id.* at *10. This Court acknowledged that ERISA fiduciaries may violate their fiduciary obligations by filing false SEC filings. *Patten*, 2010 WL 894050, at n. 16. Discussing its finding of no fiduciary breach, the *Patten* Court reasoned that because the defendants were not "alleged to have encouraged participants to review [the SEC filings], but instead only stated that they were available if participants wished to review them, it seems unlikely that the SEC filings could be used as a basis for finding that defendants breached their duty not to misrepresent or fail to disclose material facts about the Plan."[4] 2010 WL 894050, at n. 16.

I do not find that Defendants' SEC filings give rise to a breach of fiduciary duty claim. While Plaintiff is correct that some courts have found that incorporated SEC filings do constitute fiduciary speech, recent jurisprudence has declined to hold ERISA fiduciaries liable for SEC filings. *See Lingis*, 649 F.Supp.2d 861, *Patten,* 2010 WL 894050*, Bausch & Lomb Inc. ERISA Litig.*, No. 06-cv-6297, 2008 WL 5234281 (W.D.N.Y. Dec. 12, 2008). Here, I find that Defendants' SEC filings were made in a corporate capacity, rather than in their capacity as ERISA fiduciaries. Furthermore, as discussed in *Patten*, Plaintiffs do not allege that they were

---

[4] The Court found no fiduciary violation because the plaintiff alleged negligent omissions which was not actionable. *Patten*, 2010 WL 894050, at *10.

encouraged to review SEC filings. Accordingly, Plaintiffs' claims regarding Defendants' breach of fiduciary duty as to SEC filings are dismissed.

2. Statements in Public Disclosures

Defendants argue that allegedly misleading statements were made in their capacity as corporate executives and not as Plan fiduciaries. Individuals do not act as ERISA fiduciaries "simply because [they make] statements about [the company's] expected financial condition or because an ordinary business decision turn[ed] out to have an adverse impact on the plan." *Varity Corp. v. Howe*, 516 U.S.489, 505 (1996) (internal quotations omitted). Communications are fiduciary in nature only if statements are "intentionally connected" to benefits. *Id.*

Plaintiffs complain that Defendants made materially misleading disclosures about General Growth's financial condition regarding its outstanding debt and the risks it faced in refinancing that debt. Defendants argue that none of Plaintiff's complained-of statements were made in an ERISA fiduciary capacity.

In *Varity*, the Supreme Court discussed a situation in which an ERISA fiduciary can wear "two hats." *Varity*, 516 U.S. at 498. In *Varity*, the complained-of statements were made at a meeting where employee benefits were specifically discussed and compared. *Id*. at 501. In such a circumstance, the Court held that a reasonable employee could have reasoned that defendant was communicating in both its capacity as employer and plan administrator. *Id*. at 502. Further, the Court accepted that the defendant had "*intentionally* connected its statements about [the corporation's] financial health to statements it made about the future of benefits, so that its intended communication about the security of benefits was rendered materially misleading. *Id*. at 505 (emphasis original).

Plaintiffs point to numerous examples of allegedly misleading statements made by Director Defendants. For example, Plaintiffs quote from financial reports, public statements, company conference calls, and press releases expressing optimism and confidence in the Company's financial situation. None of these statements, however, were in any way connected to Plan Benefits. Accordingly, I dismiss Plaintiffs' claims regarding Defendants' breach of fiduciary duty as to allegedly misleading public statements.

### 3. Omissions Regarding General Growth's Financial Condition

Plaintiffs allege that Defendants did not disclose the truth about GGP's "precarious financial condition and the real risk that it might collapse under the weight of its reckless business practices." Fiduciaries have a duty to disclose material information. *Mondry*, 557 F.3d at 807. However, there is no obligation to "share specific information about investments offered by the Plan." *See Brieger v. Tellabs, Inc.*, 629 F.Supp.2d 848, 866 (N.D. Ill. 2009); *Lingis v. Motorola Inc.*, 649 F.Supp.2d 861, 866 (N.D. Ill. 2009) ("[W]hile Defendants may have had some obligation to disclose Plan-specific information to beneficiaries, they were under no duty to generally share additional information about any of the various investments . . . offered by the Plan."). "Creating a standard that requires Plan fiduciaries to continuously gather and disclose nonpublic information bearing some relation to the plan sponsor's financial condition would extend [] the statutory language [of ERISA] beyond [its] plain meaning." *Lingis*, 649 F.Supp.2d at 866 (internal quotations omitted); *See also Patten v. The Northern Trust Co.*, – F.Supp.2d–, 2010 WL 894050 (N.D. Ill. 2010); *In re Citigroup Erisa Litig.*, No. 07 Civ 9790, 2009 WL 2762708, at *22 (S.D.N.Y. Aug. 31, 2009) ([I]t is quite another matter to suggest that a fiduciary must volunteer financial information about companies in which participants may invest. That would transform fiduciaries into investment advisors, and [] fiduciaries do not have a duty to

give investment advice or to opine on the stock's condition." (internal citations and quotations omitted).

In *Baker v. Kingsley*, 387 F.3d 649 (7th Cir. 2004), the plaintiffs alleged that the defendants breached their fiduciary duties by failing to inform plan participants that "there was a 'significant risk that the OMC Health Plan would be terminated.'" *Id*. at 661. While there is no duty to disclose the likelihood of a future termination of a plan, a fiduciary who intentionally misleads plan participants through statements or omissions may be held liable. *Id*. at 661-62. In *Baker*, similar to this case, plan participants alleged that defendants continued to give the company positive assessments even when the defendants knew that the company was likely to fail. *Id*. at 661. The Seventh Circuit found that the plaintiffs' allegations, in the absence of "specific allegations of intent to deceive" were insufficient to state a claim. *Id*. at 662. The Court further noted that "the failure to disclose the likelihood of bankruptcy and plan termination may have been an innocent byproduct of the company's efforts to keep from its creditors and competitors information it had no duty to disclose." *Id*. In *Lingis*, this Court noted that the degree to which a fiduciary has "an affirmative obligation to disclose material information is unclear." *Lingis*, 649 F.Supp.2d at 875. The *Lingis* Court discussed the possibility that requiring disclosure of non-public information to plan beneficiaries, exclusive of the general market, could "run afoul of the insider trading laws." *Id*. at 876; *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1098 (9th Cir. 2004). The Court went on to note that "the harm [p]laintiffs contend was caused by the lack of disclosure was in fact the result of misleading the marketplace generally rather than misleading ERISA beneficiaries specifically, and that [p]laintiffs' proper avenue of relief is pursuant to securities law." *Lingis*, 649 F.Supp.2d at 876.

Here, I do not find that Defendants breached a fiduciary obligation to disclose material information to Plan participants. Like *Baker*, it is likely that Defendants' omissions were a byproduct of keeping such information from creditors and competitors. Furthermore, as the Seventh Circuit noted in *Baker*, creating the fiduciary duty as suggested by Plaintiffs could "distur[b] the carefully delineated corporate disclosure laws." *Baker*, 387 F.3d at 662. Indeed, the statutory text of ERISA cautions against construction that requires a fiduciary to disclose what would be otherwise impermissible. 29 U.S.C. § 1144(d) ("Nothing in this subchaper shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States. . . or any rule or regulations issued under any such law."); *See also Lingis*, 649 F.Supp.2d at 876. Plaintiffs' claims for breach of fiduciary duty through omission are dismissed.

Accordingly, Defendants' motion to dismiss count II is granted.

C. Plaintiffs State a Claim for Failure to Monitor.

Count III of the complaint is brought against the Director Defendants and the Investment Committee Defendants (collectively the "Monitoring Defendants") and alleges that the collective Monitoring Defendants breached their duty to monitor. Specifically, Plaintiffs allege that Defendants breached their fiduciary duty to monitor by failing to ensure that: (1) appointed fiduciaries had adequate information about the Company's debt obligations and ability to obtain the necessary financing; (2) appointed fiduciaries appreciated the risk of significant investment by employees in an undiversified employer stock fund; and, (3) monitoring Defendants allowed fiduciaries to offer GGP Stock as an investment alternative for the Plan.

Plaintiffs are correct that ERISA imposes upon fiduciaries a duty to monitor those they appoint to carry out plan functions. The Seventh Circuit has recognized that ERISA requires appointing fiduciaries "to take prudent and reasonable action to determine whether [their

appointees are] fulfilling their fiduciary obligations." *Baker*, 387 F.3d at 663. Such prudent and reasonable action includes periodic review of the appointees' performances, providing appointees with necessary information, and taking action if appointees make imprudent decisions. *Brieger v. Tellabs, Inc.,* 629 F.Supp.2d 848, 867 (N.D. Ill. 2009); 29 C.F.R. Section 2509.75-8 at FR-17.

First, Defendants argue that because only Bucksbaum and Freibaum had the power to appoint members to the Investment Committee, all other Defendants should be dismissed.[5] In their reply, Defendants argue that this is significant because "Plaintiffs' claim is that the Investment Committee Defendants breached their fiduciary duty by continuing to offer General Growth stock as a plan investment, not that the Plan's investment managers, if any, breached their fiduciary duty." Accordingly, Defendants argue that individuals who did not have the power to appoint the Investment Committee cannot be liable for failing to monitor its actions.

Plaintiffs argue that the complaint clearly alleges that "members of the Investment Committee [were] empowered to add, remove or change investment managers or options as it felt appropriate." Fiduciaries who have the power to appoint other fiduciaries have a duty to monitor because the "duty to monitor is thus a natural extension of the duty to appoint and remove plan fiduciaries." *Lingis,* 649 F.Supp.2d at 882. Accordingly, all members of the Investment Committee had fiduciary duties, which they allegedly breached.

While Plaintiffs are correct that indeed, the Investment Committee members were fiduciaries with duties to monitor, I find that nonetheless, all Defendants aside from Director Defendants must be dismissed from this count. The Investment Committee was charged with "identifying and selecting a blend of well managed investment options, monitoring the

_____

[5] While Michaels is a Defendant Director and Investment Committee member, the Complaint does not allege that he had that power to appoint in his capacity as a Director.

investment strategies, performance and risk characteristics, taking appropriate action if objectives are not being met, and identifying and selecting service providers to assist in meeting and maintaining Plan objectives." Accordingly, it was the Investment Committee, and not fiduciaries appointed by the Investment Committee, who were responsible for Plan investments. Furthermore, Plaintiffs' Complaint belies the claim that Investment Committee fiduciaries had inadequate information regarding the Company's debt obligations, and that they failed to appreciate that risk of employee investments. In fact, the Complaint alleges that Defendants had accurate information regarding the Company's financial situation, and purposefully concealed that information. The Investment Committee was charged with determining investment strategies and taking appropriate action if objectives were not being met. Accordingly, it was the Investment Committee that maintained GGP Stock as an investment alternative when it was allegedly no longer prudent to do so, and the Director Defendants who allegedly failed to monitor the Investment Committee's imprudent actions.

Having limited this count to Defendants Bucksbaum and Freibaum (Michaels did not have the power to appoint in his position as a Director Defendant and therefore did not have a fiduciary duty to monitor), I must now address Defendants' argument that Plaintiffs fail to meet the notice pleading standard as articulated by *Twombly and Iqbal*. Defendants contend that Plaintiffs provide merely barebones allegations that are not sufficient to demonstrate that their claim is plausible. Defendants' argument focuses on the fact that Plaintiff cannot state a claim for failure to monitor because a monitoring fiduciary must only periodically review the performance of its fiduciaries to ensure compliance with the terms of the plan. Plaintiffs however allege that Director Defendants failed to provide them with the information necessary to

fulfill their obligations which is part of the duty to monitor. *Brieger v. Tellabs, Inc.*, 629
F.Supp.2d 848, 867 (N.D. Ill. 2009).

One difficulty with Plaintiffs' argument is that both Bucksbaum and Freibaum and were
members of the Investment Committee. Therefore, as a practical matter, Bucksbaum and
Freibaum were constantly in a position to evaluate the performances of the Investment
Committee's actions by virtue of their committee membership. The crux of Plaintiffs' assertion,
however, is that Bucksbaum and Freibaum failed to ensure that the Investment Committee had
sufficient information to make prudent decisions. It is true that Plaintiffs have not set forth
specific information that the Investment Committee did not consider. However, the question of
whether Bucksbaum and Freibaum breached their duty to monitor will require further factual
development. *Howell v. Motorola, Inc.*, 337 F.Supp.2d 1079, 1099 (N.D. Ill. 2004) (declining to
dismiss the plaintiff's failure to monitor claim without discovery). Accordingly, count III
remains as to Bucksbaum and Freibaum.

### D. Plaintiffs State a Claim for Breach of Loyalty.

In count IV, Plaintiffs allege that all Defendants breached their fiduciary duties of loyalty
by placing the interests of themselves and the Company before the interests of the Plan and its
Participants. Defendants allegedly breached their duty by "(a) failing to engage independent
fiduciaries who could make independent judgments concerning the Plan's holdings in GGP
Stock; (b) failing to notify appropriate federal agencies, including the United States Department
of Labor, of the facts and transactions that made GGP Stock an unsuitable investment for the
Plan; (c) failing to take such other steps as were necessary to ensure that Participants' interests
were loyally and prudently served; (d) with respect to each of these above failures, doing so in
order to prevent drawing attention to the Company's inappropriate practices; and (e) by otherwise

placing the interests of the Company and themselves above the interests of the Participants with respect to the Plan's investment in Company Stock. In addition, Plaintiffs allege that Defendants participated in insider trading, selling their stock at artificially inflated prices and personally profited while the Plan and its Participants suffered losses.

ERISA fiduciaries owe Plan participants a duty of loyalty. 29 U.S.C. § 1104(a)(1)(A). While ERISA allows fiduciaries to be company employees or officers, 29 U.S.C. § 1108(c)(3), a "fiduciary with two hats [must] wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). Defendants argue that Plaintiffs' allegations are insufficient to meet the pleading standard under *Twombly* and *Iqbal*. I disagree. Plaintiffs have identified specific insider stock sales by Defendants Freibaum, Michaels, and Schlemmer, and has generally identified other alleged breaches. This is sufficient to survive a motion to dismiss. *See Cress v. Wilson*, No. 06 Civ. 2717, 2007 WL 1686687, at *10 (S.D.N.Y. June 6, 2007), *In re ADC Telecommunications, Inc. ERISA Litig.*, 03-2989, 2004 WL 1683144, at *8 (D. Minn. July 26, 2004). Accordingly, I deny Defendants' motions to dismiss count IV.

### E. Plaintiffs State a Claim for Co-Fiduciary Liability.

Count V of the complaint alleges co-fiduciary liability. A fiduciary may be liable for another's breach only if he: (1) participates knowingly in, or undertakes knowingly to conceal, an act or omission that he knows is a breach; (2) fails to follow his fiduciary duties, thereby enabling another fiduciary to commit a breach; or (3) has knowledge of the breach committed by another fiduciary and makes no reasonable efforts to remedy that breach. 29 U.S.C. § 1105(a). Defendants argue that this count should be dismissed because Plaintiffs have not sufficiently plead the elements of a co-fiduciary claim.

Plaintiffs allege that Defendants knowingly participated in each other's fiduciary breaches, enabled each other's breaches, and failed to make any efforts to remedy such breaches. While it is true that Plaintiff has parroted the elements of the breach, given the details of the complaint, and the fact that all allegations were incorporated by reference, I find that Plaintiffs have met the pleading standard.

Defendants' motion to dismiss count V is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied in part. Defendants' motions to dismiss counts I, IV and V are denied. Defendants' motions to dismiss count II are granted. I dismiss from count III the Investment Committee members, however, count III stands as to Director Defendants Bucksbaum and Freibaum.

ENTER:

James B. Zagel
United States District Judge

DATE: May 6, 2010